**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-23425-CIV-SIMONTON**

**ALEJANDRO LLANES,**

       **Plaintiff,**

**v.**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**
**Administration,**

       **Defendant.**
_____/

## ORDER

    This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Alejandro Llanes, ("Plaintiff") and by Defendant Carolyn W. Colvin, ("Defendant"), Acting Commissioner of Social Security Administration, ECF Nos. [28] and [33].   This matter was referred to the undersigned Magistrate Judge pursuant to the Clerk's Notice of Magistrate Judge Assignment, for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters, EFC No. [29].  The summary judgment motions are now ripe for disposition.

    For the reasons stated below, the undersigned **RECOMMENDS** that the Plaintiff's Motion for Summary Judgment, ECF No. [28], be **DENIED**, that Defendant's Motion for Summary Judgment, ECF No. [33], be **GRANTED**, and the decision denying benefits be **AFFIRMED**.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act") on June 20, 2008; and filed for Supplemental Security Income benefits pursuant to Title XVI of the Act on June 20, 2008.[1] (R. 115, 119).  In both applications, Plaintiff alleged disability beginning on March 31, 2008.  Both claims were denied initially on July 25, 2008, and upon reconsideration on October 17, 2008.  The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"); and, a hearing was held on September 30, 2010. (R. 32-56).  Plaintiff and vocational expert Christina Fannin Morrison testified at the hearing. (R. 33, 36-55).  Following the hearing, the ALJ issued an unfavorable decision denying Plaintiff's claim for benefits. (R. 19-28).  Plaintiff requested review with the Social Security Administration Appeals Council, which denied review. (R. 1-3).  Having exhausted all administrative remedies, Plaintiff timely filed the Complaint in the case at bar seeking judicial review of the Commissioner's decision pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c).  Plaintiff requests this Court to remand this case to the Commissioner for further examination, analysis, and a hearing.

II.   **LEGAL ISSUES PRESENTED**

The legal issues presented are 1) whether the ALJ properly followed Social Security Administration Ruling 02-01p (SSR 02-1p) in evaluating Plaintiff's obesity, and 2) whether the ALJ properly applied the 11th Circuit Court of Appeal's credibility standard in determining that the Plaintiff's pain testimony was not credible.  EFC No. [28] at 4 and 7.

---

[1] The letter "R" followed by a page number is used to designate a page in the Administrative Records.

### III.   STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, (1971); *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.  *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir. 1989).  This restrictive standard of review, however, applies only to findings of fact.  No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed de novo, including the determination of the proper standard to be applied in reviewing claims.  *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan,* 894 F.2d at 1529.

### IV.   THE FIVE-STEP SEQUENTIAL ANALYSIS

The Social Security Administration applies a five-step sequential analysis to make a disability determination.  20 C.F.R. §§ 404.1520(a) and 416.920(a).  The analysis follows each step in order, and the analysis ceases if at a certain step, the ALJ is able to

determine, based on the applicable criteria, either that the claimant is disabled or that the claimant is not disabled.

### A.  Step One

Step one involves a determination of whether the claimant is engaging in substantial gainful activity, or SGA. 20 C.F.R. §§ 404.1520(b) and 416.920(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a) and 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b) and 416.972(b).  If an individual has been participating in substantial gainful activity, he or she will not be considered disabled, despite the severity of symptoms, age, education, and work experience; and, regardless of physical and mental impairment.  *Id.* The analysis proceeds to step two if the individual is not engaging in substantial gainful activity.  In the case at bar, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the date of his application, March 31, 2008, and therefore the analysis proceeded to step two. (R. 21).

### B.  Step Two

At the second step, the claimant must establish that he has a severe impairment.  Step two has been described as the "filter" which requires the denial of any disability claim where no severe impairment or combination of impairments is present.  *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).  This step has also been recognized as a "screening" to eliminate groundless claims.  *Stratton v. Bowen,* 827 F.2d 1447, 1452 (11th Cir. 1987).  The ALJ makes a severity determination regarding a classification of the claimant's medically determinable impairment or combination of impairments.  20 C.F.R. § 416.920(c).  To be severe, an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities.  If the ALJ finds that the claimant has a severe medically determinable impairment or combination of

impairments, the process is advanced to the third step.  In the case at bar, the ALJ found that Plaintiff had the severe impairments of obesity, lumbar degenerative disc disease, and non-insulin dependent diabetes mellitus. (R. 21).  Specifically, the ALJ found that the impairments had more than a minimal effect upon the claimant's abilities to perform basic work functions, and thus, qualify as severe. (R. 21).  The ALJ found that Plaintiff also had the non-severe impairment of hypertension but that the impairment did not significantly limit Plaintiff's ability to do basic work activities.  (R. 22).  These determinations are not challenged.  The ALJ then proceeded to step three.

### C.  Step Three

The third step requires the ALJ to consider if the claimant's impairment or combination of impairments reach the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings").  If the claimant's impairment or combination of impairments does not meet the criteria specified in the Listings, then the ALJ must proceed to the fourth step.  In the case at bar, the ALJ found that neither the severe impairments nor any combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 22).  The ALJ stated that he consulted listings governing the musculoskeletal impairments (1.04A, B, and C for Disorders of the Spine), the cardiovascular system (4.00D1 and 2, 4.00H and 4.01), and the listing governing diabetes mellitus (9.08) and determined that, based on the objective medical evidence, Plaintiff did not meet the requirements for disability during the period at issue.  (R. 22-25).

Plaintiff challenges the ALJ's step three determination, contending that the ALJ failed to consider Plaintiff's obesity as a concomitant factor that, in addition to his degenerative disc disease, should be considered medically equivalent to an orthopedic listing under SSR 02-01p.  Although obesity was removed from the Listings effective

October 25, 1999, Plaintiff asserts that the regulations continue to provide for the consideration of obesity in combination with other impairments and that the ALJ failed to sufficiently evaluate Plaintiff's increased back pain due to his obesity in determining that his impairments did not medically equal a Listing.  ECF No. [28] at 5.

### D.  Step Four

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the claimant from performing his past relevant work.  First, the ALJ makes a determination of the claimant's Residual Functional Capacity as described in 20 C.F.R. §§ 404.1520(e), 416.920(e) and 416.945.  Residual Functional Capacity ("RFC") measures a person's ability to do physical and mental work activities on a sustained basis despite limitations caused by his impairments.  In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e) and 416.945; SSR 96-8p; *Tuggerson-Brown,* 2014 WL 3643790, at *2 (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

In reviewing the medical evidence for on-going treatment for back pain, the ALJ found limited evidence of continued treatment and, despite Plaintiff's weight, there existed no evidence of any muscle, joint, or musculoskeletal disorders or disturbances of gait that matched the impairments in the above listings or would have prevented the Plaintiff from performing sedentary activities.   The ALJ found that the Plaintiff's obesity had not resulted in the loss of physical function. (R. 24).  Specifically, the ALJ made the following residual functional capacity finding:

> The claimant retains the maximum functional ability to sit 8 hours (2 hours continuously) and stand and/or walk for 2 hours in an eight-hour workday. In addition, he is able to lift, carry, push, or pull 10 pounds occasionally and 5 pounds frequently.  I further find that there are no nonexertional restrictions on functions such as reaching, handling, seeing, hearing, and

speaking.  The claimant would need to avoid such postural activities as frequent but not occasional climbing, balancing, and stooping and could frequently kneel, crouch, and crawl.  Further, he would be able to tolerate extremes of temperature or humidity and would not have to avoid working at heights or around hazardous moving machinery.  He would not also need to avoid excessive amount of pulmonary irritants such as dust, fumes, and gases.  Finally, he has no mental limitations that would have an adverse impact on his capacity to make occupational and performance adjustments to jobs entailing simple, detailed and/or complex instructions.

(R. 25).

Plaintiff challenges this determination contending that the ALJ failed to give proper consideration to his obesity and pain symptoms in determining his disability status. ECF No. [28] at 4 and 7. Plaintiff asserts that the ALJ failed to follow SSR 02-01p in evaluating the effect of his obesity on his severe impairments.

Additionally, Plaintiff contends that the ALJ failed to follow the credibility standard established by the Eleventh Circuit Court of Appeal in determining that Plaintiff's pain testimony was not credible.  ECF No. [28] at 7.  Plaintiff asserts that the ALJ did not articulate adequate reasons for discrediting Plaintiff's pain testimony and that the ALJ incorrectly applied the two-part credibility standard. The Plaintiff contends that substantial evidence supports his pain testimony and that his pain testimony should be accepted as true.  Plaintiff contends that the case should be remanded with instructions to the ALJ to carefully consider the effect of Plaintiff's morbid obesity on his back pain, ECF No. [28] at 9-10.

The second phase of Step Four requires a determination of whether the claimant has the RFC to perform the requirements of his past relevant work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant possesses the RFC to do his past relevant work, the claimant at this step is considered not disabled and the inquiry ends.  Here, the ALJ determined that the Plaintiff was incapable of performing his past relevant work as a stage hand. (R. 26). This determination is not challenged.

E.  **Step Five**

If the claimant is not able to perform his past relevant work, the ALJ progresses to the fifth step.  At this step, the burden of production shifts to the Commissioner to show that other work that Plaintiff can perform exists in significant numbers in the national economy.  *Jones v. Apfel,* 190 F.3d 1224, 128 (11th Cir. 1999); 20 C.F.R. §§ 404.1560(c)(2) and 416.920(a)(4)(v).  In making this determination, the ALJ considers a claimant's RFC, age, education, and work experience to determine if the claimant can perform any other work.  20 C.F.R. §§ 404.1562 and 416.920(a)(4)(v).  If the claimant can perform other work, the ALJ will make a finding that the claimant is not disabled.

In the case at bar, at step five, the ALJ initially found that the Plaintiff could perform a full range of sedentary work and used the Medical-Vocational Guidelines ("the Grids") contained in 20 C.F.R. pt. 404, subpt. P, app. 2 and Rule 201.21 to determine that Plaintiff had not been under a disability since March 31, 2008, the date Plaintiff alleges he began suffering from disability. (R. 27-28).  The ALJ then considered additional limitations, and used a vocational expert to determine that, even considering these limitations, there were significant numbers of jobs that Plaintiff could perform.  Plaintiff challenges this determination on the grounds that the ALJ's RFC determination was erroneous.

V.    **EVIDENCE OF PLAINTIFF'S PHYSICAL IMPAIRMENTS**

The following is a synopsis of the evidence in the record regarding Plaintiff's impairments of lower back pain and obesity.

A.  **Plaintiff's Testimony and Self-Reports of Pain**

Plaintiff testified that at the time of the hearing held on September 30, 2010, he was 49 years old, and that he attended school until sometime between the ninth and tenth grade, and that he had since attained a GED.  (R. 36). Plaintiff testified that he worked as a stage hand for a "long time" until he was terminated in 2008 because could

no longer perform his duties and missed several days of work because of his back pain. (R. 37).  He stated that he had been suffering from back pain for seven to ten years, and that he was physically incapable of performing his past work. (R. 39). He testified that regularly saw his primary physician for his back issues and was told that cartilage is missing from three spinal discs. (R. 40).  Plaintiff stated that his physician has recommended that he undergo surgery for his pain and the only non-operative treatment that she could provide was a stretching regimen that he followed every morning. (R. 40). His physician also recommended that he diet in order to get his weight under control. (R. 41).

Plaintiff testified that he had been prescribed nine medications to control his hypertension, diabetes, and pain, but that he was frequently noncompliant because there were times when he could not afford to pay for the prescriptions. (R. 43).  He stated that he took his pain medications, and that he has experienced a side effect of a burning sensation in his stomach. (R. 44).  He testified that the intensity of his pain was a seven on a ten point scale when not on his medication, but lowered to a five when medicated. (R. 44).  He further stated that sitting, standing, and lifting made his pain worse. (R. 45). Plaintiff stated that he could only sit for 15 to 30 minute intervals before pain developed in his legs, knees, and ankles, and the bottom of his feet became numb. (R. 45-46).  He testified that he could only stand for five to ten minutes before his back pain became unbearable. (R. 49).  Plaintiff testified that he is six feet tall and weighs about 390 pounds. (R. 38).  He further claimed that he reclined in a reclining chair for five to six hours a day, and that he could drive for at least twenty minutes before becoming uncomfortable. (R. 49-50).  He also stated that he had difficulty bending, could not pick up small objects from the floor, and could only climb one flight of stairs. (R. 50).

Plaintiff submitted a Disability Report on June 20, 2008, in which he stated that his ability to work was limited by memory problems, back problems, and his weight.  He

further stated that his back and legs hurt too much to get out of bed on most days and that his conditions caused him pain. (R. 146). Plaintiff submitted a second Disability Report on August 12, 2008, where he claimed that his back pain had worsened, that he continued to have difficulty getting out of bed, and that he now needed assistance sitting up in bed.  He further stated that he had difficulty moving and walking. (R. 166). Plaintiff submitted an undated third Disability Report where he stated that his back pain had increased since his last report on August 12, 2008 and that the pain increased if he sat or stood for extended periods of time.  He stated that he must lie down in order to alleviate the pain, and suffered from depression because he is unable to work due to his condition. (R. 177).  He stated that he had been prescribed Motrin 800 to help alleviate the pain. (R. 178).

### B.  Medical Evidence in the Record

A Magnetic Resonance Imaging ("MRI") report dated July 25, 2008, documents that Plaintiff has desiccation of the intervertebral discs from L1 through S1 and intervertebral disc space narrowing at all levels, most prominent at L4-5. (R. 201).  The MRI showed narrowing of the lumbar canal consistent with congenital canal stenosis, in addition to mild facet joint hypertrophy at L1-2, posterior disc bulge with associated mild narrowing of the spinal canal at L2-3, posterior disc bulge with central protrusion and bilateral facet hypertrophy at L3-4 and L4-5, and a prominence of epidural fat circumferentially around the spinal canal with mild narrowing of the spinal canal diameter at L5. (R. 201-202).  The attending physician's impression from the MRI was that Plaintiff had degenerative changes of the lumbar spine, most prominent at L3-4, and L4-5.  (R. 202).

A radiology report dated June 26, 2008, is consistent with the MRI report and documents that Plaintiff has marginal osteophyte formation at multiple levels in addition to vacuum phenomenon within the disc space of L3-4 and L4-5. (R. 206- 207).

From April 18, 2008 to May 13, 2010, Plaintiff visited the Rafael Penalver Clinic at Jackson Memorial Hospital (JMH) on six occasions for various purposes related to his back pain.   On April 18, 2008, Plaintiff walked to the emergency room at JMH complaining of back ache, specifically a mild, achy, and dull pain of the right lumbar region. (R. 227).  He was seen by Jan Hasyn, PA., who diagnosed Plaintiff with sciatica and prescribed Skelaxin and Naproxen for pain. (R. 228).  Mr. Hasyn also stated that Plaintiff should engage in only limited work for ten days. (R. 228).  During an examination conducted by Dr. Roberto Garcia on July 15, 2009, Plaintiff was found to have some degenerative changes to the thoracic spine and indications of hypertension. (R. 328). During a May 13, 2010 physical examination by Dr. Lydia Nunez, Plaintiff was able to ambulate with a steady gait and his appearance was described as "active".  (R. 283).  On March 16, 2010, Plaintiff returned to Jackson Memorial Hospital complaining of lower back pain persisting from the previous two months caused by his lifting of heavy weight. (R. 259).  Plaintiff stated Tramadol, prescribed during a prior ER visit, made the pain "better." (R. 259).

On September 22, 2008, Plaintiff drove himself to Trans-Imaging Diagnostic Center for a consultative examination ordered by the Office of Disability Determinations and conducted by Dr. John Catano. (R. 244).  Plaintiff described his lower back pain as sharp and constant with an intensity of eight on a ten-point scale.  He also stated that the pain was aggravated by walking, standing, lifting, or long walking.  (R. 244). Dr. Catano observed that Plaintiff walked with a normal gait, and ambulated without any assistive device. (R. 244). Plaintiff reported the history of his present illness to Dr. Catano, stating that he had lower back pain for several years which was moderate and intermittent, and had become worse in April of 2007, to the point of feeling stiff in the morning.  The Plaintiff rated the pain as sharp and constant at a level of 8 on a 10-point scale.   Plaintiff stated that his standing was limited to 30 minutes, sitting was limited to one hour, and he

could walk for up to one block. Dr. Catano observed that Plaintiff's extremities showed no signs of clubbing, cyanosis, edema or vascular disease, and that his joints appeared normal and showed a normal range of motion with gross and fine manipulation intact. (R. 245-246).  Dr. Catano reported that Plaintiff was able to button and unbutton his shirt, pick up coins, and that he had "good grip" (5/5) on both hands.  (R. 246).  Additionally, Dr. Catano observed Plaintiff had a straightening of the lumbar lordosis with moderate tenderness and spasm on the paraspinalis muscle. (R. 246).  Dr. Catano's report states that Plaintiff was capable of getting in and out of a chair, and on and off the examining table by himself, although with some difficulty. (R. 246).  Dr. Catano's final diagnostic impression was that Plaintiff was morbidly obese with mild hypertension and chronic lower back pain syndrome, due to multilevel degenerative joint disease and mild stenosis.  (R. 246).

Plaintiff's treating physician, Dr. Lydia Nunez, completed a Multiple Impairment Questionnaire detailing Plaintiff's impairments on September 23, 2010.  (R. 341).  Dr. Nunez diagnosed Plaintiff with Type II Diabetes, hypertension, obesity and chronic lower back pain. (R. 341).  Dr. Nunez reported that the frequency of the back pain was "recurrent" and that precipitating factors leading to the pain were bending over or lifting heavy objects.  (R. 341).  The intensity of Plaintiff's pain was described as "moderately severe" (between 7-8 on a 10-point scale) and that Plaintiff's fatigue was also "moderately severe" (between 7-8 on a 10-point scale). (R. 342).  Dr. Nunez reported that she had been unable to relieve Plaintiff's pain with medication.  Dr. Nunez was unable to assess the duration for which Plaintiff could sit or stand nor could she assess the maximum weight that Plaintiff could lift or carry.   (R. 342-343).  She asserted that Plaintiff's symptoms were likely to increase if he were placed in a competitive work environment and that Plaintiff should not engage in work activity that requires kneeling, bending, or stooping.  (R. 344-346).

## C.  Dr. Woodard's Residual Functional Capacity Assessment

On October 16, 2008, a state agency physician, L. A. Woodard, D.O., completed a Residual Functional Capacity Questionnaire. (R. 251-58).  Dr. Woodard noted that Plaintiff had been diagnosed with degenerative disc disease of the lumbar spine, high blood pressure, and obesity. (R. 251). Dr. Woodard noted that an MRI performed July 25, 2008, showed degenerative changes to Plaintiff's spine, most prominently at L3-4 and L4-5. Bilateral x-rays of Plaintiff's hips showed a decrease in femoral head and neck offset bilaterally. (R. 252).  Dr. Woodard further noted that Plaintiff had not received any conservative treatment or physical therapy for his symptoms and that he took over the counter pain medication to alleviate his pain. (R. 252).  Additionally, Plaintiff took prescription medications to control his blood pressure. (R. 252- 53).  Dr. Woodard noted that Plaintiff had visited Dr. Catano for a consultative examination on September 22, 2008, and that he ambulated with a slow but otherwise normal gait without any assistive device. (R. 253). During the consultative examination it was reported that Plaintiff's strength was 5/5 in both hands, that there was straightening of his lumbar lordosis, and moderate tenderness and spasms on the paraspinalis muscle. (R. 253).

Based on the medical evidence, Dr. Woodard opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  He could sit for about six hours out of an 8 hour workday and stand and/or walk for at least two hours. (R. 252.). He could also occasionally balance and stoop and could frequently kneel, crouch, and crawl.  (R. 252).  With respect to Plaintiff's symptoms, Dr. Woodard found that the symptoms were attributable to a medically determinable impairment, that the severity and duration of the symptoms were not disproportionate to the expected severity and duration of that impairment, and that the severity of the symptoms was consistent with the total medical and nonmedical evidence.  (R. 256).  In Dr. Woodard's opinion, Plaintiff

had some limitations due to his back pain secondary to his herniated disc but he was
able to perform work with restrictions outlined in the RFC Questionnaire.  (R. 253).

    **VI.**    <u>**Legal Analysis**</u>

        **A.**    <u>**The ALJ Properly Applied the Correct Standard in Determining that
Plaintiffs Pain Testimony was Not Credible.**</u>

When evaluating the credibility of a claimant's statements regarding his pain or
other symptoms, the ALJ must follow the requirements of 20 C.F.R. §§ 404.1529 and
416.929, which are further elaborated upon in SSR 96-7p.  In accordance with 20 C.F.R. §§
404.1529 and 416.929, the ALJ will "consider all of [claimant's] symptoms, including pain,
and the extent to which [claimant's] symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a) and
416.929(a).  Other evidence includes "statements or reports from the claimant, a treating
or nontreating source, … [claimant's] efforts to work, and any other evidence showing
how your impairment(s) and any related symptoms affect your ability to work."  20 C.F.R
§§ 404.1529(a) and 416.929(a).

Social Security Ruling 96-7p provides a two-step process for evaluating
symptoms, including pain.  First, the ALJ must consider whether there is an underlying
medically determinable physical or mental impairment(s) that could reasonably be
expected to produce the claimant's pain. SSR 96-7p.  Second, once an underlying
physical or mental impairment that could be expected to produce the individual's pain
has been determined, the ALJ must evaluate the intensity, persistence, and limiting
effects of the individual's symptoms to determine the extent to which the symptoms limit
the claimant's ability to do basic work activities.  SSR 96-7p.  The extent to which a
claimant's statements about symptoms can be relied upon as evidence depends upon
the credibility of the statements.  SSR 96-7p.  Factors to be considered when determining
whether a claimant's statements are credible include the consistency of claimant's

statements, the medical evidence, and the claimant's medical treatment history.  SSR 96-7p.  A claimant's statements are consistent when they are consistent with the medical sources and other evidence in the record. SSR 96-7p.

Based upon his examination of the record, the ALJ found that Plaintiff's statements regarding his pain symptoms were not credible.  Plaintiff testified that his pain is of such intensity that he must recline for five to six hours a day and that his pain would not allow him to stand while simultaneously using his hands for more than five to ten minutes. (R. 49).  He also stated that he took cyclobenzaprine, Motrin 800, and Tramadol on a daily basis in order to relieve his back pain.  (R. 43).  Plaintiff also testified that he had applied for and received unemployment benefits up to and until the fourth quarter of 2009. (R. 37).  As discussed below, a review of the record supports the ALJ's determination that the Plaintiff's testimony regarding his pain was not entirely credible.  The record indicates that many of his statements conflict with the relevant medical evidence.

Following the two-step evaluation process outlined in SSR 96-7p, the ALJ determined that Plaintiff did have a medically determinable physical impairment that could reasonably be expected to produce his pain symptoms. However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  Substantial evidence exists to support this conclusion.  One of the conditions for the receipt of unemployment benefits is that the recipient must be ready, willing, and able to return to work.  The condition requiring recipient to be able to work stands in direct contrast to Plaintiff's stated condition during the time he received unemployment benefits. Plaintiff alleges that he has been disabled since March 31, 2008, a date that coincides with his receipt of unemployment benefits.  If Plaintiff's pain symptoms were debilitating to the extent to which he testified, he would have been incapable of performing work after March 31, 2008 and, as such, would no

longer be eligible to receive unemployment benefits, which he continued to receive throughout 2009.  Based upon this evidence, either Plaintiff was incapable of working and, therefore, improperly receiving unemployment benefits or he was capable of working and not entitled to receive disability benefits.  Regardless of the scenario, as the ALJ found, Plaintiff's credibility was tarnished further as his statements regarding his pain were inconsistent with the medical evidence in the record described above, including the examination by Dr. Catano.

Additionally, Plaintiff's statements regarding his ability to work, the duration for which he must recline and the total length of time in which he could stand, conflict with medical records and his residual functional capacity assessments.  Dr. Woodard found, based on her examination of the medical records, that Plaintiff could sit for six hours and stand for at least two hours during an eight hour work day. (R. 252.)  Further, Dr. Woodard stated that Plaintiff was capable of climbing scaffolds, ropes, and stairs and frequently capable of stooping and kneeling. (R. 252.).  These assessments contrast with Plaintiff's stated need to recline for five to six hours a day and his stated inability to stand for more than ten minutes. (R. 49).  Additionally, there are several instances in the record where Plaintiff drove himself or walked to his medical appointments. (R. 227, 244). He also drove himself to his hearing with the ALJ. (R. 50).

Plaintiff alleges that his back pain is so intense that he is incapable of engaging in substantial gainful activity. (R. 51). Plaintiff testified that he takes medication daily to relieve his back pain, specifically Motrin 800 and Tramadol. (R. 43). However, the record does not reflect that he was prescribed refills for any of these medications.  On one occasion, Plaintiff stated that he received Tramadol from his mother, implying that he may not have had a prescription for the medication at that time. (R. 259).  Medical records also seem to indicate that the treatment for his back issues has been mostly conservative and has not included any type physical therapy or surgical procedures.

Thus, the ALJ followed the appropriate standard to determine that Plaintiff's subjective complaints of pain were not credible to the extent claimed by Plaintiff, and substantial medical evidence exists in the record to support the ALJ's determination that Plaintiff's pain testimony is not credible.

### B.   The ALJ Properly Evaluated Plaintiff's Obesity

In following the five-step process for evaluating a disability mandated by 20 C.F.R. §§ 404.1520 and 416.920, Step 3 requires that the ALJ consult the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the Listings). If a claimant's impairments do not meet or medically equal one of the "Listings" then the ALJ proceeds to Step Four to determine whether the claimant is capable of performing his past relevant work. In conducting the Step Four analysis, the ALJ will determine the claimant's RFC to measure the claimant's ability to perform his past relevant work.

Listing 9.09, *Obesity*, was removed from the Listings effective October 25, 1999. In response to the removal of the obesity listing, the Social Security Administration issued SSR 02-1p to provide guidance for the evaluation of obesity as a causative or contributing factor for several listed impairments. In evaluating a claimant's disability claim, ALJs are to consider the effects of obesity on the claimant's impairments and determine whether the combined effects of obesity with other impairments are of such severity as to medically equal a Listing. SSR 02-1p. A consideration for obesity is made at each step the Sequential Evaluation Process to determine whether the claimant has a medically determinable impairment (Step Two), whether the impairment is severe (Step Two), whether the impairment meets or equals the requirements for a Listing (Step Three), and whether the impairment, combined with claimant's obesity, prevents him from doing past relevant work (Step Four) or other work that exists in significant numbers in the national economy (Step Five). SSR 02-1p. The existence of obesity will be determined by the medically relevant evidence, specifically the judgments of

- 17 -

physicians who have examined the claimant, and will be considered severe when, alone or in combination with another medically determinable impairment, it significantly limits the claimant's physical or mental ability to do work. SSR 02-1p.  A claimant may meet the requirements of a Listing if he has an impairment that, in combination with his obesity, meets the criteria of that Listing, i.e., his obesity has increased the severity of coexisting or related impairments. SSR 02-1p.  Additionally, obesity alone may be medically equivalent to a listed impairment if it is of such severity that it limits the claimant's functional ability to the same extent of another impairment. SSR 02-1p. However, the ALJ may not make assumptions about the severity or functional effects of obesity combined with other impairments.  The evaluations will be based on the information in the case record. SSR 02-1p.  In evaluating obesity during an RFC assessment, the ALJ "must consider the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 02-1p.  While obesity may limit exertional (sitting, standing, etc.) and postural (climbing, crouching) functions, not all effects are obvious.  The ability to manipulate may be affected by adipose tissue in hands or fingers, the ability to tolerate extreme environmental conditions may be limited, and obesity may cause sleep apnea resulting in drowsiness and lack of clarity during the work day.  SSR 02-1p.  The ALJ must look to the medical evidence to determine whether a claimant's has any limitations in his ability to perform necessary work activities as a result of his obesity. SSR 02-1p.

Plaintiff contends that the ALJ did not follow the dictates of SSR 02-01p in evaluating his obesity impairment at Step Three and that the ALJ should have found that his obesity combined with his degenerative disc disease met "the medical equivalence of an orthopedic listing."  ECF No. [28] at 5.  Plaintiff, however, has failed to specify any Listing he contends that his condition medically equaled, and does not provide any argument or analysis that compares his impairment to any Listing.  This contention is

made only in a conclusory sentence.  Since the undersigned cannot discern any basis to support the contention that Plaintiff's condition medically equivalent to a Listing, this argument is rejected without further discussion.  *See Nunn v. Colvin*, No. 2:14-cv-00263-REB, 2015 WL 5679738, *7 (D. Idaho Sep. 25, 2015), and cases cited therein (in absence of meaningful analysis of a Listing, plaintiff's assertions regarding the Listings are inadequate).

In addition to his contention regarding the Listings, Plaintiff contends that the ALJ did not "realistically evaluate the increased back pain" that would result from his obesity in combination with his lumbar degenerative disc disease in determining his Physical Residual Functional Capacity at Step Four. ECF No. [28] at 6.  Plaintiff concedes that the ALJ acknowledged his obesity, but argues that the ALJ's evaluation was "insufficient" as the "ALJ did not explain how he reached his conclusions on whether obesity caused any physical or mental limitations."  ECF No. [28] at 7.  In response, the Defendant asserts that there is substantial evidence to support the ALJ's determination that Plaintiff is not disabled. ECF No. [33] at 7.  Defendant states that the ALJ properly evaluated Plaintiff's obesity in the context of his other impairments in determining that he is capable of perform sedentary work. ECF No. [33] at 8.

The undersigned agrees that there is substantial evidence in the record that supports the ALJ's determination.   During Plaintiff's May 13, 2010 visit to Penalver Clinic, his treating physician, Dr. Nunez, confirmed Plaintiff's obesity but also noted that he ambulated with a steady gait and his appearance was described as "active." (R. 283). In Dr. Nunez's Multiple Impairment Questionnaire, she opined that Plaintiff could engage in work that did not include kneeling, bending, or stooping. (R. 346). On September 22, 2008, Plaintiff drove himself to Trans-Imaging Diagnostic Center for a consultative examination by Dr. Catano. (R. 244).  Dr. Catano's examination reflected that, although Plaintiff was morbidly obese, his extremities and joints were normal, his gross and fine

manipulation abilities were intact, he had a "good grip" in his hands, and a full range of motion in all joints and extremities, except for his lumbar spine.  With respect to his lower back, there was straightening of the lumbar lordosis, moderate tenderness and spasm on the paraspinalis muscle, and the SLR was positive in the supine position and negative on the seated position. (R. 245-46).  His diagnostic impression was that Plaintiff was a "morbidly obese male with mild hypertension and chronic lower back pain syndrome, due to multilevel degenerative joint disease and mild stenosis." (R. 246).

In his decision, the ALJ recognized Plaintiff's obesity was a severe impairment that had been diagnosed by several physicians.  However, the ALJ noted that Plaintiff's obesity had not resulted in the loss of any physical function and that no objective medical evidence existed that documented any limitations to his exertional functions due to his obesity.  ALJ states that Plaintiff's ability to manipulate had not been affected by the presence of adipose tissue in his hands or fingers.  Also, there was evidence that Plaintiff suffered on a consistent basis from common conditions and symptoms associated with obesity, like sleep apnea, fatigue, or drowsiness.  Nevertheless, the ALJ limited Plaintiff's functional capacity to sedentary work, which is defined in 20 C.F.R. § 404.1567(a) as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

In sum, in his evaluation of Plaintiff's obesity, the ALJ found nothing in the record that showed claimant's ability to perform work activities was inhibited by the combined effects of his obesity with his other impairments.  The ALJ determined that Plaintiff's ability to walk, sit, stand, lift, carry, push, and pull were not impaired by his obesity and his ability to perform postural functions was intact.  The ALJ followed the guidelines of

SSR 02-1p by considering the effects of Plaintiff's obesity on his other severe impairments.  As a result, the ALJ evaluated the Plaintiff's RFC and determined that Plaintiff could perform a full range of sedentary work, as previously described. The undersigned finds that the ALJ properly followed SSR 02-1p in evaluating Plaintiff's obesity and substantial evidence supports his determination that Plaintiff can perform sedentary work.

Plaintiff has not challenged the determination that <u>if</u> he can perform a full range of sedentary work, a finding of "no disability" is directed by the Grids.  Rather, Plaintiff contends that he cannot perform a full range of sedentary work based upon the severity of the limitations caused by his obesity.  The ALJ did not stop his analysis at the Grids, however, based upon his RFC determination.  The ALJ also examined whether, assuming that Plaintiff had the additional restrictions found by Dr. Woodard, and thus could not perform a full range of sedentary work, there were sufficient jobs in the national economy that Plaintiff could perform.  The ALJ posed a hypothetical to a vocational expert, Christina Fannin Morrison, that expressly included the additional restrictions found by Dr. Woodard.  (R. 20, 27).  Based on those restrictions, the VE opined that Plaintiff could perform the following jobs that existed in significant numbers:  charge account clerk (DOT 205.367-014), order clerk for food and beverage (DOT 209.567-014), and surveillance system monitor (DOT 379.367-010).  (R. 53-54).  Thus, even with greater restrictions than those actually found by the ALJ, the Plaintiff was determined to be not disabled.

VII.    **CONCLUSION**

Based upon the above analysis, and keeping in mind the limited nature of the review permitted, the evidence supports the ALJ's conclusion that Plaintiff's obesity and pain are not so intense that he cannot perform substantial gainful activity that is limited to sedentary activities.  The ALJ made a proper assessment of both Plaintiff's pain and obesity and his conclusions are supported by substantial evidence in the medical records and by the testimony of a Vocational Expert.  The undersigned Magistrate Judge concludes that the decision of the ALJ that Plaintiff was not under a disability was supported by substantial evidence in the record, and the ALJ applied the correct standards of law.  Therefore, in accordance with the above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgement, ECF No. [28], is **DENIED**, that Defendant's Motion for Summary Judgment, ECF No [33], is **GRANTED**, that the decision denying benefits is **AFFIRMED**, and that **FINAL JUDGMENT** will be entered in favor of the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security Administration and against Plaintiff, Alejandro Llanes.

**DONE AND ORDERED** in chambers in Miami, Florida on September 30, 2015.


*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRTE JUDGE**


Copies furnished via CM/ECF to:

All counsel of record